UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
JUDITH SAMUEL,

                              Plaintiff(s),                    <u>COMPLAINT</u>

          - against -                     Jury Trial Demanded

THE PORT AUTHORITY OF NEW YORK     Civil Action,
AND NEW JERSEY, MARTIN DUKE, Sued    Case No. 06 CV 13098 (JGK)(DF)
herein in his Official and Personal Capacity,
PAUL BLANCO, NANCY ERTAG-BRAND,    ECF CASE
CRUZ RUSSELL and LINDA BENTZ, Sued
herein in their Personal Capacities,

                              Defendant(s).
------------------------------------------------------------------------x

      Plaintiff, by and through her attorneys, TAUBMAN KIMELMAN & SOROKA, LLP, as

and for her Complaint against the Defendants states and alleges as follows:


<u>NATURE OF THE CASE</u>

      1.      This is an action under Title I of the Americans with Disabilities Act of 1990

(ADA), 42 U.S.C. §12101 *et seq.*, Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. §2000e *et seq.* ("Title VII") and 42 U.S.C. Sections 1983 and 1988 and the Fourteenth

Amendment to the Constitution of the United States to remedy unlawful employment practices.


<u>JURISDICTION AND VENUE</u>

      2.      This Court has jurisdiction of the claims herein pursuant to 28 U.S.C.A. §§1331,

and 1343 as well as 42 U.S.C. §12117 which incorporates by reference Title VII of the Civil

Rights Acts of 1964 (Title VII), 42 U.S.C. §2000e-5.

3.     Venue is properly placed in this District in that Defendant has its principle place of business in this District and also the events which gave rise to this action occurred within this District.  Additionally, venue is proper pursuant to §7106 of the Unconsolidated Laws of New York in that this judicial district lies wholly or partially within the port of New York district.

## PROCEDURAL REQUIREMENTS

4.     On or about September 6, 2005 and February 21, 2006, Plaintiff timely filed charges of discrimination and retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC"). Plaintiff brings this action within ninety (90) days of the receipt of a Notice of Right to Sue, issued by the EEOC on or about August 3, 2006 and August 28, 2006, respectively.

## PARTIES

5.     Plaintiff, JUDITH SAMUEL (hereinafter "Plaintiff"), is and was, at all times mentioned herein, a citizen of the United States and a resident of the State of Connecticut.

6.     Plaintiff is and was, at all times mentioned herein, an employee of Defendant THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY.

7.     Plaintiff is and was, at all times mentioned herein, an "employee" within the meaning of the ADA and Title VII.

8.     Upon information and belief, Defendant THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY (hereinafter, "Port Authority") is and was, at all times mentioned herein, a bi-state municipal corporation created by Compact between the States of New York and New Jersey to develop terminal, transportation and other facilities of commerce within the Port of New York District.

9.      Upon information and belief, the Port Authority is and was, at all times mentioned herein, an "employer" within the meaning of the ADA and Title VII.

10.     Upon information and belief, Defendant PAUL BLANCO (hereinafter "Blanco"), is a citizen of the United States and a resident of the State of New York.

11.     Upon information and belief, Blanco is and was at all times mentioned herein an employee of the Port Authority, acting as Chief Financial Officer within the Office of the Chief Financial Office.

12.     Upon information and belief, Blanco, at all relevant times herein, was responsible for the supervision of employees within the Office of the Chief Financial Office including Plaintiff herein.

13.     At all times referred to herein, Blanco acted under color of the laws, statutes, ordinances, rules, regulations, policies, customs, and usages of the State of New York and/or New Jersey.

14.     Upon information and belief, Defendant NANCY ERTAG-BRAND (hereinafter "Ertag-Brand"), is a citizen of the United States and a resident of the State of New York.

15.     Upon information and belief, Ertag-Brand is and was, at all times mentioned herein, an employee of the Port Authority, acting as Advisor to the Chief Financial Officer and/or General Manager of the Regional Funding Office.

16.     Upon information and belief, Ertag-Brand, at all relevant times herein, was Plaintiff's direct supervisor.

17.     At all times referred to herein, Ertag-Brand acted under color of the laws, statutes, ordinances, rules, regulations, policies, customs, and usages of the State of New York and/or New Jersey.

18.     Upon information and belief, Defendant CRUZ RUSSELL (hereinafter "Russell"), is a citizen of the United States and a resident of the State of New York.

19.     Upon information and belief, Russell is and was, at all times mentioned herein, an employee of the Port Authority, acting as Deputy Chief of Strategic Planning within the Office of Policy and Planning.

20.     Upon information and belief, Russell, at all relevant times herein, was Plaintiff's direct supervisor and/or responsible for the supervision of all employees within the Office of Policy and Planning including Plaintiff herein.

21.     At all times referred to herein, Russell acted under color of the laws, statutes, ordinances, rules, regulations, policies, customs, and usages of the State of New York and/or New Jersey.

22.     Upon information and belief, Defendant LINDA BENTZ (hereinafter "Bentz"), is a citizen of the United States and a resident of the State of New York.

23.     Upon information and belief, Bentz is and was, at all times mentioned herein, an employee of the Port Authority, acting as General Manager, Economic and Strategic Analysis within the Office of Policy and Planning.

24.     Upon information and belief, Bentz, at all relevant times herein, was Plaintiff's direct supervisor.

25.     At all times referred to herein, Bentz acted under color of the laws, statutes, ordinances, rules, regulations, policies, customs, and usages of the State of New York and/or New Jersey.

26.     Upon information and belief, Defendant MARTIN DUKE (hereinafter "Duke"), is a citizen of the United States and a resident of the State of New York.

27.     Upon information and belief, Duke is and was, at all times mentioned herein, an employee of the Port Authority acting as Chief Medical Officer within the Office of Medical Services.

28.     Upon information and belief, Duke is and was, at all times mentioned herein, responsible for determining the physical and/or medical fitness of Port Authority employees for duty.

29.     At all times referred to herein, Duke acted under color of the laws, statutes, ordinances, rules, regulations, policies, customs, and usages of the State of New York and/or New Jersey.

30.     That each and all of the acts of Duke alleged herein were done in his personal capacity as well as in his official capacity as Chief Medical Officer for the Port Authority.

FACTS

31.      Plaintiff was hired full-time by the Port Authority in approximately May 1993 as an "Associate Economic Analyst", level B90, in the Office of Policy and Planning.

32.     Plaintiff was assigned to the Office of Policy and Planning from approximately May 1993 until July 2004 when the department to which she was assigned was reorganized. Plaintiff's duties while assigned to the Office of Policy and Planning included implementing an automatic survey system and "trouble shooting" computer related issues.

33.     While assigned to the Office of Policy and Planning from May 1993 until July 2004, Russell was Plaintiff's direct supervisor.

34.     In approximately 1997, Russell promoted Plaintiff to Level B91.

35.     In approximately 1998, Plaintiff complained to Russell that she was being sexually harassed by a co-worker and also filed a sexual harassment complaint with the Port Authority's Office of Equal Employment.

36.     Each year subsequent to Plaintiff's filing complaints of sexual harassment, Russell denied Plaintiff's requests for promotion and promoted others in the department who were less qualified than Plaintiff or equally qualified.

37.     While assigned to the Office of Policy and Planning, Plaintiff consistently received satisfactory performance evaluations and received a merit increase every year.

38.     In approximately July 2004, Plaintiff was transferred to the Office of the Chief Financial Officer.

39.     While assigned to the Office of the Chief Financial Officer, Ertag-Brand was Plaintiff's direct supervisor and Blanco was Ertag-Brand's direct supervisor.

40.     Plaintiff's duties while assigned to the Office of the Chief Financial Officer included managing and creating databases and keeping track of funds.

41.     In approximately October 2004, Plaintiff began experiencing severe, disabling headaches and was hospitalized for approximately 10 days.  Plaintiff was diagnosed with "venous sinus thrombosis" or a massive blot clot in her brain.

42.     As a result of the foregoing and at the recommendation of her doctor, Plaintiff was out of work from approximately October 13, 2004 until January 31, 2005.

43.     During the time that Plaintiff was out sick, she reported to the Office of Medical Services approximately every 4-6 weeks.

44.     Approximately one week prior to returning to work, Ertag-Brand contacted Plaintiff to inform her that the agency was offering her a severance package and inquired whether she would be interested in accepting such a package.  Plaintiff responded that she did not want to leave her current position but that she would consider the offer.

45.     On or about January 31, 2005, Plaintiff's first day back to work, Ertag-Brand reiterated the agency's offer of a severance package and again Plaintiff stated that she was not interested.

46.     The following day, on or about February 1, 2005, Ertag-Brand called Plaintiff from Florida and informed her that she had until the end of February to make a decision with respect to the severance package.  Again, Plaintiff responded that she was not interested.

47.     Plaintiff subsequently requested a meeting with Blanco regarding Ertag-Brand's ill treatment of her since returning to work including being locked out of the database that Plaintiff herself had collected, being given only menial tasks and being pressured to accept a severance package.  Blanco stated he was aware of the agency's offer of the severance package and approved of it.

48.     Also at the aforementioned meeting, Blanco informed Plaintiff that she would not be receiving a merit increase that year, which she had received every year thus far, due to her extended absence.

49.     Plaintiff subsequently sent a memo to Blanco and Ertag-Brand asking them to reconsider her merit increase.  Ertag-Brand decided to give Plaintiff 50% of her increase but told Plaintiff that she had to earn it during the remainder of the evaluation period and that the other 50% would be given to Plaintiff's co-worker who had covered for her during her absence.

50.     Upon information and belief, Plaintiff's co-worker was never given 50% of her merit increase.

51.     Plaintiff subsequently requested a follow-up meeting with Ertag-Brand at which Plaintiff made known her dissatisfaction with how she has been treated since returning to work to which Ertag-Brand responded, "You are right.  I no longer have a need for you in this office. You should find a position elsewhere."

7

52.     In approximately February or March 2005, Plaintiff requested another meeting with Ertag-Brand regarding her merit increase at which a representative from the Human Resources Department was present.  The Human Resources representative explained to Plaintiff that decisions regarding merit increases are normally made towards the end of the evaluation period which was several months away.  Plaintiff responded that a decision had already been made, referencing her earlier meeting with Ertag-Brand at which Ertag-Brand became infuriated.

53.     In approximately April 2005, Plaintiff was told that her job function was eliminated within the Office of the Chief Financial Officer and that she was temporarily being transferred back to the department headed by Russell until another position could be found for her.

54.     Upon information and belief, Ertag-Brand purposely, knowingly and intentionally and in an effort to have Plaintiff resign, arranged Plaintiff's transfer back to the department headed by Russell whom Ertag-Brand knew possessed hostility towards Plaintiff.

55.     Upon information and belief, Ertag-Brand, along with the approval of Blanco, conspired with Russell to transfer Plaintiff back to the department headed by Russell.

56.     Plaintiff requested to be placed in the IT department rather than Russell's department but her request was ignored.  Upon information and belief, positions were available in the IT department.

57.     Upon being transferred back to the Office of Policy and Planning, Bentz was Plaintiff's direct supervisor.

58.     In approximately May 2005, Plaintiff again began experiencing severe and disabling headaches and was rushed to the emergency room.  As a result of the foregoing and at the recommendation of her physician, Plaintiff was out of work for approximately 3 weeks.

59.     After three weeks, Plaintiff's physician cleared Plaintiff to return to work but placed her on a temporary restriction of a 3-day work week which was accepted by the Office of Medical Services.

60.     On or about May 24, 2005, Russell forwarded a memo to the Office of Medical Services requesting that Plaintiff be evaluated for job fitness.

61.     From approximately June to August 2005, Plaintiff worked 3 days a week. During this period, Plaintiff continued to be monitored by the Office of Medical Services to which she reported every 2-3 weeks.

62.     As per Russell's request of May 24, 2005, on August 25, 2005, Plaintiff was evaluated by Duke in the Office of Medical Services.  Without physically evaluating Plaintiff and/or consulting with her physician or other specialists, Duke placed Plaintiff on a permanent restriction of a 3-day work week.

63.     On or about August 25, 2005, Duke wrote a memo to Russell advising him that Plaintiff was placed on a permanent 3-day work week restriction and that if he was unable to utilize Plaintiff with such a restriction, termination proceedings should be instituted.

64.     On or about September 1, 2005, Russell wrote a memo to Plaintiff advising her that the Office of Policy and Planning would not be able to utilize Plaintiff on a 3-day restriction.

65.     As Plaintiff continued to report to work subsequent to receiving the aforementioned memo, on or about September 21, 2005, Bentz sent a memo to Plaintiff directing that she not return to work and further stating that "[u]ntil such time as you are able to work a full-time schedule or find a suitable alternate placement opportunity, you will be carried sick."

66.     Plaintiff's last day at work was September 21, 2005.

67.     Thereafter, Plaintiff continued to report periodically to the Office of Medical Services.

68.     In approximately February 2006, Plaintiff's physician cleared her to return to work full-time.  Plaintiff submitted documentation from her physician clearing her for full-time duty.  Despite the foregoing, the Office of Medical Services kept Plaintiff on a permanent 3-day work restriction.

69.     Plaintiff forwarded her resume to Human Resources and made numerous requests for alternate placement.  Human Resources never responded to Plaintiff's requests.  Upon information and belief, other suitable positions were available within the agency.

70.     In approximately June 2006, Russell recommended that Plaintiff be terminated and termination proceedings were initiated. Said proceedings are currently pending.


## AS AND FOR A FIRST CAUSE OF ACTION

71.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 70 of this Complaint with the same force and effect as if set forth herein.

72.     Plaintiff, as a public employee, has a constitutionally protected property interest in her employment, which could only be taken pursuant to due process.

73.     Defendant Duke, acting under color of state law and in his capacity as Chief Medical Officer for the Port Authority, denied Plaintiff her property without due process in violation of 42 U.S.C. Section 1983 and the Fourteenth Amendment to the Constitution of the United States, by placing her on a permanent medical restriction of a 3-day work week without affording her an opportunity to refute his determination.

74.     By reason of Defendant Duke's placement of Plaintiff on a permanent medical restriction of a 3-day work week and the failure to be afforded due process, Plaintiff has lost wages and other compensation.

AS AND FOR A SECOND CAUSE OF ACTION

75.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1
through 74 of this Complaint with the same force and effect as if set forth herein.

76.     The actions of Defendant Duke set forth above caused Plaintiff to be denied her
property without due process in violation of 42 U.S.C. Section 1983 and the Fourteenth
Amendment to the Constitution of the United States.

77.     Defendant Port Authority is liable for the actions of Defendant Duke because
Defendant Duke is the person within the Port Authority with ultimate authority to make and
execute personnel policy for the Port Authority with respect to the medical fitness for duty of its
employees.

78.     By reason of the decision of Defendant Port Authority's policymaker, Plaintiff
has lost wages and other compensation.

AS AND FOR A THIRD CAUSE OF ACTION

79.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1
through 78 of this Complaint with the same force and effect as if set forth herein.

80.     Plaintiff, as a public employee, has a constitutionally protected property interest
in her employment, which could only be taken pursuant to due process.

81.     Defendant Russell, acting under color of state law and in his capacity as Deputy
Chief of Strategic Planning for the Port Authority, denied Plaintiff her property without due
process in violation of 42 U.S.C. Section 1983 and the Fourteenth Amendment to the
Constitution of the United States, by removing her from her position as an Associate Economic
Analyst in the Office of Policy and Planning based upon the determination to place Plaintiff on a

11

permanent medical restriction of a 3-day work week without affording her an opportunity to refute the determination of a permanent restriction.

82.     By reason of Defendant Russell's removal of Plaintiff and the failure to be afforded due process, Plaintiff has lost wages and other compensation.

## AS AND FOR A FOURTH CAUSE OF ACTION

83.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 82 of this Complaint with the same force and effect as if set forth herein.

84.     Plaintiff, as a public employee, has a constitutionally protected property interest in her employment, which could only be taken pursuant to due process.

85.     Defendant Bentz, acting under color of state law and in her capacity as Plaintiff's supervisor in the Office of Policy and Planning, denied Plaintiff her property without due process in violation of 42 U.S.C. Section 1983 and the Fourteenth Amendment to the Constitution of the United States, by removing her from her position as an Associate Economic Analyst in the Office of Policy and Planning based upon the determination to place Plaintiff on a permanent medical restriction of a 3-day work week without affording her an opportunity to refute the determination of a permanent restriction.

86.     By reason of Defendant Bentz's removal of Plaintiff and the failure to be afforded due process, Plaintiff has lost wages and other compensation.

## AS AND FOR A FIFTH CAUSE OF ACTION

87.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 86 of this Complaint with the same force and effect as if set forth herein.

88.     Defendants Blanco, Ertag-Brand, Russell, Bentz and/or Duke, as supported by their actions stated above, conspired to deprive Plaintiff of her right to due process as guaranteed by the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. Section 1983.

89.     By reason of the foregoing, Plaintiff has lost wages and other compensation.

### AS AND FOR A SIXTH CAUSE OF ACTION

90.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 89 of this Complaint with the same force and effect as if set forth herein.

91.     Plaintiff has cerebral venous thrombosis or a blot clot in her brain.  The blood clot substantially limits Plaintiff in the major life activities of thinking, concentrating, reading, seeing, walking, traveling and/or working.

92.     Plaintiff is an individual with a "disability" within the meaning of the ADA.

93.     Plaintiff, with a reasonable accommodation of a part-time work arrangement and/or a work-at-home arrangement which, upon information and belief, the Port Authority made available to other employees, can perform the essential job functions of her job as an Associate Economic Analyst.

94.     Plaintiff is a "qualified individual with a disability" within the meaning of the ADA.

95.     Plaintiff has been a "qualified individual with a disability" since approximately June 2005.

96.     Defendant Port Authority failed to make reasonable accommodations for Plaintiff's disability and removed her from her position as Associate Economic Analyst.

97.     Defendant Port Authority's refusal to make reasonable accommodations for Plaintiff's known disability constitutes discrimination against Plaintiff due to her disability in violation of the ADA.

98.     Defendant Port Authority acted with malice or with reckless indifference towards Plaintiff's federally protected rights as a qualified individual with a disability when it refused to make reasonable accommodations for Plaintiff's known disability.

99.     By reason of the foregoing, Plaintiff has lost wages and other compensation.


AS AND FOR A SEVENTH CAUSE OF ACTION

100.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 99 of this Complaint with the same force and effect as if set forth herein.

101.    From approximately October 2004 until approximately February 2006, Plaintiff had a blot clot in her brain that substantially limited major life activities of thinking, concentrating, reading, seeing, walking, traveling and/or working.

102.    Defendants were aware that Plaintiff, from approximately October 2004 until February 2006, had a blot clot in her brain that substantially limited major life activities of thinking, concentrating, reading, seeing, walking, traveling and/or working.

103.    That since approximately February 2006, Plaintiff has been qualified for the position of Associate Economic Analyst.

104.    That Defendants, because of Plaintiff's history of a blot clot in her brain that substantially limited major life activities of thinking, concentrating, reading, seeing, walking, traveling and/or working, discriminated against Plaintiff by failing to reinstate her to her position as an Associate Economic Analyst in violation of the ADA.

105.    That by reason of the foregoing, Plaintiff has lost wages and other compensation.

## AS AND FOR A EIGHTH CAUSE OF ACTION

106.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 105 of this Complaint with the same force and effect as if set forth herein.

107.    Plaintiff has a blot clot in her brain that since approximately February 2006 has not limited and/or has not substantially limited major life activities of thinking, concentrating, reading, seeing, walking, traveling and/or working.

108.    That since approximately February 2006, Plaintiff has been qualified for the position of Associate Economic Analyst.

109.    That since approximately February 2006, Defendants have regarded Plaintiff's physical and/or medical impairment as one which substantially limits major life activities of thinking, concentrating, reading, seeing, walking, traveling and/or working.

110.    That Defendants, because of a perceived disability, discriminated against Plaintiff by failing to reinstate her to her position as Associate Economic Analyst in violation of the ADA.

111.     That by reason of the foregoing, Plaintiff has lost wages and other compensation.


## AS AND FOR A NINTH CAUSE OF ACTION

112.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 111 of this Complaint with the same force and effect as if set forth herein.

113.    Defendant Port Authority, in retaliation for Plaintiff's having filed charges of discrimination and/or retaliation against it with the U.S. Equal Employment Opportunity Commission, instituted termination proceedings against Plaintiff.

114.    That as a result of the foregoing, Defendant Port Authority violated the ADA and/or Title VII.

115.    That as a result of the foregoing, Plaintiff has lost wages and other compensation.


<u>AS AND FOR AN TENTH CAUSE OF ACTION</u>

116.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 115 of this Complaint with the same force and effect as if set forth herein.

117.    Defendant Port Authority, in retaliation for Plaintiff's having filed a sexual harassment complaint, consistently failed to promote Plaintiff and engaged in activities calculated to deny Plaintiff her employment.

118.    That, as a result of the foregoing, Defendant Port Authority violated Title VII.

119.    That as a result of the foregoing, Plaintiff has lost wages and other compensation.

WHEREFORE, Plaintiff demands judgment against the Defendants on each and every cause of action:

1.      awarding back salary, front salary, benefits, seniority and accrued interest thereon, from September 21, 2005 until entry of judgment against Defendants;

2.       awarding the full amount of applicable compensatory damages;

3.      awarding counsel fees pursuant to Section 1988 for violation of Federal Civil Rights Statutes;

4.      and for such other relief as this Court may deem just and proper.

Dated: November 7, 2006
          New York, New York

Yours etc.,

TAUBMAN KIMELMAN & SOROKA, LLP
Attorneys for Plaintiff
30 Vesey Street, 6th Floor
New York, New York 10007
(212) 227-8140

BY: _____
       PHILIP E. TAUBMAN  (PT 7312)