UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JUDITH SAMUEL,

                        Plaintiff,

– against –

THE PORT AUTHORITY OF NEW YORK AND NEW
JERSEY, MARTIN DUKE, Sued herein in his Official and
Personal Capacity, PAUL BLANCO, NANCY ERTAG-
BRAND, CRUZ RUSSELL and LINDA BENTZ, Sued herein
in their Personal Capacities,

                        Defendants.
-----------------------------------------------------------------X

*Index No.:* 06 CV 13098

**RULE 56.1 STATEMENT**

      Defendants, The Port Authority of New York and New Jersey (the "Port Authority"), Martin Duke, Paul Blanco, Nancy Ertag-Brand, Cruz Russell and Linda Bentz by their attorney, Milton H. Pachter, submit this statement, pursuant to Rule 56.1 of the Local Rules of the Southern and Eastern Districts of New York, in support of their motion for summary judgment.

      The following are material facts of which there is no general issue of fact to be tried:

      **1.**      The Port Authority is a bi-state agency created by Compact in 1921 between the States of New York and New Jersey with the consent of the Congress of the United States of America.

      **2.**      The statutory mission of the Port Authority is to develop terminal, transportation and other facilities within the port of the New York district. N.Y. Unconsol. Laws, § 6401 (McKinney 2000).

      **3.**      Doctor Duke has been employed by the Port Authority since 1988 as a medical doctor for the Port Authority's Office of Medical Services ("OMS").

4.  Paul Blanco has been employed by the Port Authority since 1971 and is the Chief Financial Officer for the Port Authority.

5.  Nancy Ertag-Brand was employed by the Port Authority from October 1986 to January 2007, and worked in the Chief Financial Officer's office at all times relevant hereto.

6.  Cruz Russell has been employed by the Port Authority since 1985 and at all times relevant hereto, was the Director of the Office of Policy and Planning.

7.  Linda Bentz has been employed by the Port Authority since 1987 and at all times relevant hereto was the Assistant Director in the Office of Policy and Planning.

### A. Plaintiff's Positions With The Port Authority

8.  Plaintiff was hired as an intern in the Office of Policy and Planning in 1993. In 1995, when the internship ended, plaintiff was hired permanently as managerial employee, level B-90. *See*, Russell Aff., ¶ 5 and Lee Aff., Ex. A, pp. 99-100.

9.  Plaintiff's duties included troubleshooting computer hardware and software and assisting the Technology Services Department in designing and maintaining the computer system for the Office of Policy and Planning. *See*, Lee Aff., Ex. A, p. 101. This continued to be her function while she worked in the Office of Policy and Planning.

10. From 1995 through 2004, plaintiff's worked under Mr. Russell, who was the Director of the Office of Policy and Planning. *See*, Russell Aff., ¶¶ 2 and 21.

11. From mid-2004 until April 2005, plaintiff worked in the Chief Financial Officer's office until her position was eliminated pursuant to an agency-wide downsizing. *See*, Blanco Aff., ¶ 13 and Lee Aff., Ex. A, p. 119.

12. On April 27, 2005, plaintiff was re-assigned to the Office of Policy and Planning on a temporary basis. *See*, Blanco Aff., ¶ 14.

**B.     Plaintiff's Sexual Harassment Complaint**

13.    In 1998, plaintiff informed Mr. Russell that a co-worker was leering at her in a way that made her feel uncomfortable. *See*, Lee Aff., Ex. A, pp. 119-120.

14.    Mr. Russell spoke with the individual and arranged for him to move his cubicle. He also advised plaintiff to speak with the individual if she felt comfortable doing so, which she did. *See*, Russell Aff., ¶ 15 and Lee Aff., Ex. A, pp. 121-122. As a result, the allegedly objectionable behavior stopped. *See*, Lee Aff., Ex. A, p. 122.

**C.     Plaintiff's Promotion Complaints**

15.    Plaintiff discussed her desire to be promoted to a higher position with Mr. Russell in 2000, 2003 and 2004. *See*, Lee Aff., Ex. A, p. 126.

16.    At various times, Mr. Russell told plaintiff that there were not enough points to give her a promotion, that there was not enough money in the budget and that her job function did not warrant a promotion. *See*, Lee Aff., Ex. A, p. 126.

17.    Specifically, in April 2003, Mr. Russell informed plaintiff that her excessive sick absence from March 1999 through January 10, 2003 created a situation where her work performance was uneven and undistinguishable. *See*, Russell Aff., ¶¶ 11 and 12 and Lee Aff., Ex. B.

18.    In June 2003, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") claiming she was discriminated against based on her race, sex, and disability when the Port Authority refused to promote her. *See*, Lee Aff., Ex. C. Specifically, plaintiff claimed the Port Authority perceived her as disabled because she took a leave of absence in 2002.

**19.** In its response, the Port Authority explained that the reason plaintiff had not been promoted was due to her attendance record and the fact that as the technology representative for the department, her duties and responsibilities were constrained and that she needed to assume additional duties and responsibilities if she wanted to be promoted. *See*, Lee Aff., Ex. D.

**20.** The EEOC issued a Dismissal and Notice of Rights letter in August 2003 and plaintiff did not commence an action with respect to these claims. *See*, Lee Aff., Ex. E.

**21.** Plaintiff could not identify someone Mr. Russell allegedly promoted instead of her. *See*, Lee Aff., Ex. A., pp. 274-275.

**D.    Regional Funding Office Issues**

**22.** In July 2004, plaintiff was transferred from the Office of Policy and Planning to the Chief Financial Officer's office because the project she was working on in the Regional Funding Office (i.e., designing a database for tracking grants), was taken over by the CFO. *See*, Lee Aff., Ex. A., pp. 251-252 and Blanco Aff., ¶ 3.

**23.** In October 2004, plaintiff was hospitalized due to headaches and was subsequently diagnosed with "venous sinus thrombosis" (i.e., a blood clot). Plaintiff remained out of work from October 14, 2004 until January 31, 2005, during which time she received her full compensation. *See*, Lee Aff., Ex. P., ¶¶ 41-42.

**24.** In late 2004, in an effort to reduce the size of its work force to cut costs, the Port Authority decided to offer severance packages for a limited period of time to employees in certain job titles and positions, including the position held by plaintiff. *See*, Blanco Aff., ¶ 8.

**25.** Because plaintiff was out of work when notification of the severance package went out, Mr. Blanco instructed Ms. Ertag-Brand to call plaintiff at home to inform her of the

severance package, which Ms. Ertag-Brand did. *See*, Lee Aff., Ex. A., p. 238 and Blanco Aff., ¶ 9.

**26.** After plaintiff returned to work in January 2005, Ms. Ertag-Brand had a further discussion with her about the severance package. Plaintiff indicated that she was not interested in the package and Ms. Ertag-Brand did not raise the issue again. *See*, Lee Aff., Ex. A., pp. 240-241 and Blanco Aff., ¶ 10.

**27.** In February 2005, plaintiff met with Ms. Ertag-Brand and Mr. Blanco to discuss her merit increase. She was informed that due to her absence, she would not be receiving her full merit increase. *See*, Lee Aff., Ex. A., pp. 229-230 and Blanco Aff., ¶ 11.

**28.** While plaintiff was out of work, her co-workers needed to access the database she had created. Ultimately, they had to enlist the assistance of the Technology Services Department, which provided them with technological support by re-designing the database. As a result, the Technology Services Department began providing the technological support for the database, which was the job plaintiff had done before she went out sick. *See*, Lee Aff., Ex. A., pp. 264-265 and Blanco Aff., ¶ 6.

**29.** When plaintiff returned to work, the CFO no longer required her services and her position was eliminated in accordance with an agency-wide effort to reduce positions at the Port Authority. *See*, Blanco Aff., ¶¶ 13-14.

**30.** Rather than terminate plaintiff, she was re-assigned to the Office of Policy and Planning on April 27, 2005 until she could find another position. *See*, Lee Aff., Ex. A., pp. 245-247 and Blanco Aff., ¶ 14.

**31.** While plaintiff felt that Ms. Ertag-Brand discriminated against her by transferring her back to the Office of Policy and Planning, she could not identify upon what basis Ms. Ertag-Brand was discriminating against her. *See*, Lee Aff., Ex. A., pp. 256-257.

### E.  Plaintiff's Work Restriction

**32.** On May 11, 2005, after taking the prior two days off, plaintiff informed the Office of Policy and Planning that she was taking an extended sick absence from May 11, 2005 thru June 1, 2005. *See*, Russell Aff., ¶ 23 and Lee Aff., Ex. U.

**33.** Plaintiff remained out of work through June 14, 2005. *See*, Lee Aff., Ex. B.

**34.** After Mr. Russell was informed of plaintiff's absence, he requested that OMS conduct an evaluation to determine if plaintiff was fit to perform her duties in the Office of Policy and Planning since she only worked in the department seven days and was currently out sick. *See*, Lee Aff., Ex. G.

**35.** On May 24, 2005, the absence control unit in OMS made an appointment for plaintiff to be seen by OMS for evaluation on May 26, 2005 at 10:30 a.m. during a telephone conversation with plaintiff. *See*, Lee Aff., Ex. V.

**36.** When plaintiff failed to keep her appointment on May 26, 2005, OMS informed the Office of Policy and Planning that it was unable to evaluate her medical condition and verify the legitimacy of her use of sick time; therefore, she was referred to her department for administrative disposition. *See*, Lee Aff., Ex. H.

**37.** As a result of plaintiff's failure to keep her medical appointment, she was carried as absent without leave ("AWOL") for approximately one week until she re-established telephone contact with OMS. See, Lee Aff., Exs. B, I and V.

**38.** Plaintiff was sent two letters to two different addresses setting forth the Sick Absence Control Guidelines and the procedure plaintiff was to follow when she was out of work due to sickness. The letter also provided that the Port Authority was willing to restore her pay for the AWOL period, provided plaintiff sign an acknowledgement that she understood and would adhere to the policies. *See*, Lee Aff., Ex. I.

**39.** On June 15, 2005, OMS spoke with plaintiff's physician and he informed the Port Authority that plaintiff was only able to work three days a week, even though plaintiff had never experience headaches at work. *See*, Lee Aff., Ex. P, ¶ 59, Ex. A., pp. 45-46 and Ex. W.

**40.** The Office of Policy and Planning agreed to allow plaintiff to work with this temporary restriction. As a result, she worked Wednesday through Friday. *See*, Lee Aff., Ex. A., p. 52.

**41.** On the days plaintiff was not at work, she received sick pay. *See*, Lee Aff., Ex. B.

**42.** In August 2005, plaintiff presented OMS with another note from her physician indicating that she needed to continue working three days a week, even though plaintiff was only experiencing headaches during this time approximately once a month. *See*, Lee Aff., Ex. A., pp. 61-62 and Ex. J. Plaintiff informed OMS that she still was experiencing headaches. *See*, Lee Aff., Ex. W.

**43.** Due to the fact that plaintiff's condition appeared to be continuing and her physician felt it was necessary for her to only work three days a week for an indeterminate period, OMS made the restriction permanent. *See*, Duke Aff., ¶ 15.

**44.** Plaintiff was informed that the Office of Policy and Planning should begin taking steps to terminate her if it could not utilize her with the restriction. Plaintiff was also informed that she should contact Human Resources in the event her department did not utilize her to

determine if there was a position for her in light of the permanent restriction. *See*, Lee Aff., Ex. K.

**45.** On September 1, 2005, the Office of Policy and Planning informed plaintiff that it could not utilize her with a permanent restriction. *See*, Lee Aff., Ex. L.

**46.** Plaintiff continued to work three days a week, although she took additional sick days on September 14-16, 2005, until she was again informed by her department that she should not report to work. *See*, Lee Aff., Ex. M.

**47.** Plaintiff remained out sick with pay from September 2005 through August 11, 2006. *See*, Lee Aff., Ex. B.

**48.** In June 2006, plaintiff was notified that the Port Authority was seeking to remove her from her position and terminate her employment due to the fact that the Office of Policy and Planning could not accommodate her work restriction and also due to her history of long-term sick absences. *See*, Lee Aff., Ex. N.

**49.** Following two days of hearings at which plaintiff was represented by counsel (*see*, Lee Aff., Ex. O), the hearing officer determined that plaintiff should be terminated, which she was in March 2007. *See*, Lee Aff., Ex. A, p. 78.

**50.** Plaintiff commenced this action by service of a summons and complaint dated November 9, 2006 on the defendants. In the complaint, plaintiff claims the individual defendants and the Port Authority denied her property (i.e., her job) without due process in violation of 42 U.S.C. §1983 and the 14th Amendment (comp., First Cause of Action, Second Cause of Action, Third Cause of Action, Fourth Cause of Action and Fifth Cause of Action. She also claims the Port Authority violated Title I of the Americans with Disabilities Act of 1990 by not accommodating her disability or treating her as disabled when she was not. *See*, Lee Aff.,

Ex. P, pp. 14-16. Finally, she claims the Port Authority retaliated against her by not promoting her and terminating her after she filed charges of discrimination with the EEOC. *See*, Lee Aff., Ex. P, pp. 17-18.

51.   The Port Authority and the individual defendants answered the complaint, denying the salient allegations set forth therein. *See*, Lee Aff., Ex. Q.

52.   Plaintiff also commenced an action in the United States District Court of New Jersey in November 2006 claiming she was not promoted because of her race. *See*, Lee Aff., Ex. R.

Dated:   New York, New York
         February 29, 2008

Respectfully yours,

MILTON H. PACHTER, ESQ.
*Attorney of Record for Defendant*
The Port Authority of New York & New Jersey

By: _____
Megan Lee (ML - 9709)
225 Park Avenue South, 13th Floor
New York, New York 10003
Telephone No.: (212) 435-3435

TO:   Philip E. Taubman (PT-7312)
      TAUBMAN KIMELMAN & SOROKA, LLP
      *Attorneys for Plaintiff*
      30 Vesey Street, 6th Floor
      New York, New York 10007
      Telephone No.: (212) 227-8140